Ely Goldin, Esq.
FOX ROTHSCHILD LLP
100 Park Avenue, Suite 1500
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940

*Attorneys for plaintiff Mprosiemo Limited*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MPROSIEMO LIMITED, | : |
| | : No. 17-CV-3745 |
| Plaintiff, | : |
| | : |
| -against- | : **COMPLAINT** |
| | : |
| | : |
| ARKADIY VAYGENSBERG, | : (Jury Trial Demanded) |
| LEONID TATARCHUK, | : |
| STEFAN STEFANOV, | : |
| ARKENSBERG, LLC, | : |
| NIS, INC., | : |
| ROMANIROV, LLC, | : |
| ELMWOOD VENTURES, LLC, | : |
| NICHOLAS BARTHELEMY, | : |
| GEORGE V. EATERTAINMENT, S.A., | : |
| JOHN DOES 1 through 10, | : |
| | : |
| Defendants, | : |
| | : |
| and | : |
| | : |
| BB NY OPERATIONS 357TH ST., LLC | : |
| | : |
| Nominal Defendant | : |
| | : |

Plaintiff Mprosiemo Limited ("Plaintiff"), by its attorneys, Fox Rothschild LLP, as and

for its Complaint against defendants Arkadiy Vaygensberg ("Vaygensberg"), Leonid Tatarchuk

("Tatarchuk"), Stefan Stefanov ("Stefanov"), Arkensberg, LLC ("Arkensberg"), NIS, Inc.

("NIS"), Romanirov, LLC ("Romanirov"), Elmwood Ventures, LLC ("Elmwood"), Nicholas

Barthelemy ("Barthelemy"), John Does 1 through 10 (the "John Doe Defendants"), George V.

Eatertainment S.A. ("GVE") and BB NY Operations 357th St., LLC ("BBNY"), a nominal

defendant, (collectively, the "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1.      Defendants have engaged in a systematic effort to freeze out, oppress and harass

Plaintiff, a 30% shareholder in BBNY, a company formed to establish and operate an

internationally renowned Buddha-Bar franchise in New York City.

2.      After inducing Plaintiff to invest in excess of $1,000,000 in the BBNY,

Defendants have issued unconscionable demands, used sham negotiations, used false promises

and in all respects erected roadblock after roadblock designed to frustrate Plaintiff's ownership

rights and expectations.  Thus, Defendants deprived Plaintiff of its valuable ownership rights,

rendered those ownership interests and rights valueless, and effectively made Defendants the

sole owners in full control of the opportunity.  Defendants have also wrongfully diverted

corporate assets, to the detriment of Plaintiff.

3.      Due to Defendants' oppressive actions as set forth herein, Plaintiff seeks a

dissolution of BBNY pursuant to §1104-A of the New York Business Corporation Law ("BCL"),

as well as an accounting to calculate moneys and assets misappropriated through Defendants'

misconduct.

4.      Plaintiff has also been damaged as a result of Defendants' intentional and

destructive actions.  Accordingly, Plaintiff seeks compensatory and punitive damages for, among

other things, breach of fiduciary duty, conversion, breach of the implied covenant of good faith

and fair dealing, as well as a permanent injunction.

2

5.      In addition to these common law causes of action, Plaintiff has a cause of action pursuant to the New York State Franchise Act, Article 33 New York Statutes Consolidated, section 680, et. seq., pertaining to the unlawful and fraudulent offer and sale of franchises, and granting counsel fees and costs to recover for such violations.

## JURISDICTION AND VENUE

6.      Subject matter jurisdiction is predicated upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  Defendants are subject to the personal jurisdiction of this Court because they transact business within the federal judicial district for the Southern District of New York and/or contract anywhere to supply goods or services in this judicial district and do so with a fair measure of permanence and continuity.

7.      Venue is proper in this Court because the transactions giving rise to the causes of action occurred in this federal judicial district as aforesaid.

## THE PARTIES

8.      Plaintiff **Mprosiemo Limited** is a Cyprus company with a registered office at Spyrou Kyprianou 51, SK House, 4003, Limasol, Cyprus.

9.      Defendant **Arkadiy Vaygensberg** is an adult individual and is a resident of the State of Florida, who may be served at 1280 5th Street, Miami Beach, Florida 33139.

10.      Defendant **Leonid Tatarchuk** is an adult individual and is a resident of the State of Florida, who may be served at 1280 5th Street, Miami Beach, Florida 33139.

11.      Defendant **Stefan Stefanov** is an adult individual and is a resident of the United Kingdom and may be served at Flat 9, Chesham Place, SW1X 8HN, London, England.

12.      At all times relevant hereto, defendants Tatarchuk and Stefanov acted as the actual and/or apparent agent of defendant Vaygensberg in his dealings are affairs with Plaintiff.

13.     Defendant **Arkensberg, LLC** is a New York limited liability company with a registered office at 336 South Ocean Avenue, Freeport, New York 11520.

14.     Defendant **Romanirov, LLC** is a New York limited liability company with a registered office at 336 South Ocean Avenue, Freeport, New York 11520.

15.     Defendant **NIS, Inc**. is a New York corporation with a registered office at 701 Avenue C, Apt. C-10, Brooklyn, NY 11218.

16.     Defendant **Elmwood Ventures, LLC** is a New York limited liability company formed on or about October 20, 2015, with a registered office at 1 Maiden Lane, 5th Floor, New York, New York 10038.

17.     Defendant **Nicholas Barthelemy** is an adult individual and a resident of the State of New York who may be served at 1 Maiden Lane, 5th Floor, New York, New York 10038.

18.     Defendants **John Does 1 through 10** are persons whose identities are presently unknown to Plaintiff but who aided and abetted the named Defendants in the unlawful acts complained of herein.

19.     Defendant **George V. Eatertainment S.A.** is a foreign corporation or other business entity with a principal place of business at 21 place de la Madeleine, Paris, France 75008.

20.     Upon information and belief, GVE is the owner of the Buddha-Bar brand and marks, which are actively distributed throughout the world (including the United States of America) pursuant to franchise and distribution agreements.

21.     Nominal defendant **BB NY Operations 357th St., LLC** is a New York limited liability company with a registered office at 336 South Ocean Avenue, Freeport, New York 11520.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

22.     Vaygensberg, an entrepreneur, is an immigrant from the former Soviet Union who primarily lives in or around Miami, Florida.

23.     In or around 2013, Vaygensberg caused Plaintiff to invest in excess of $5,000,000 USD in BB UK Operations Limited, t/a Buddha-Bar London ("BBUK"), a Buddha-Bar ("Buddha-Bar") franchise in London, United Kingdom.

24.     Buddha-Bar is an international bar, restaurant and hotel franchise created by restaurateur Raymond Visan and interior designer Claude Challe, with its original location having opened in Paris, France in 1996.  Information on the franchise may be found at www.buddha-bar.com

25.     Operational authority over the establishment of a Buddha-Bar franchise in London was vested with defendant Vaygensberg who, in turn, appointed defendant Stefanov to serve as a director and manage the day-to-day operations of BBUK.

26.     From its inception and up through all of 2015, BBUK continuously posted operational losses.

27.     When Plaintiff raised questions regarding the losses, defendant Vaygensberg asserted that the London restaurant market was highly competitive and expensive and that economic conditions in London made it difficult for BBUK to operate profitably in the short term.

28.     In actuality and unbeknownst to Plaintiff at the time, defendants Vaygensberg and Stefanov used BBUK as a personal slush fund from which they paid personal expenses and supported a lavish lifestyle.

5

29.     In or around 2014, Vaygensberg informed Plaintiff that he had acquired the rights to develop a Buddha-Bar bar and restaurant franchise in New York and that he had identified a prime location for the restaurant in Midtown Manhattan at or around 311 West 57th Street (the "Midtown Location").

30.     Vaygensberg encouraged Plaintiff to invest additional funds into the New York operation, citing favorable U.S. economic conditions and urged Plaintiff to make the investment quickly in order to (i) demonstrate to the landlord that the New York operation had significant backers and a sizable bank balance and thus was a worthy tenant; and (ii) make a lease down payment to secure a highly coveted space.

31.     At or around the same time, Vaygensberg created and provided false BBUK accounting records and/or management reports to Plaintiff in order to create the appearance that the economics of the BBUK operation were gradually improving, and to encourage Plaintiff to invest into the New York venture.

32.     Unbeknownst to Plaintiff, while Vaygensberg urged Plaintiff to invest funds into the Midtown Location, defendants Vaygensberg and Stefanov were running hundreds of thousands of dollars in personal expenses through BBUK.

33.     Nominal defendant BBNY was formed on or about October 24, 2014, for the purpose establishing and operating a Buddha-Bar franchise in Midtown Manhattan.

34.     Pursuant to that certain Members' Agreement dated October 29, 2014 (the "Agreement"), Plaintiff acquired a 30% membership interest (the "Plaintiff Interest") in BBNY together with a call option to purchase an additional five (5%) percent interest in BBNY from defendant Romanirov.  A true and correct copy of the Agreement is attached as **Exhibit 1**.

35.     As of October 29, 2014, Arkensberg and Romanirov were not in existence.

6

36.     In consideration for the Plaintiff Interest, Plaintiff contributed the sum of $1,040,000, which was wired to and received by BBNY on or about December 1, 2014.  A true and correct copy of BBNY's bank statement reflecting the contribution is attached as **Exhibit 2**.

37.     According to bank statements from TD Bank, as of December 1, 2014, BBNY had a bank account balance of approximately $3,700,000.  It is believed that this bank statement was provided to the landlord of the Midtown Location as set forth in ¶ 30.

38.     Operational authority over the establishment of a Buddha-Bar franchise in New York was vested with defendant Vaygensberg who, at all times relevant hereto, served as BBNY's Manager and Chairman.

39.     Pursuant to Clause 3.1 of the Agreement, BBNY was required to "carry on the business of setting up and operating a bar and restaurant facility called "Buddha Bar" at 357 West 57th Street, New York, New York USA pursuant to the Licenses and any other business it is agreed should perform in accordance with Clause 5.3 and paragraph 22 of the Schedule 1."

40.     Pursuant to Clause 1.1 of the Agreement, the term "Licenses" is a defined term that refers to the "concept license agreement to be granted by Creative Design FZ LLC to [BBNY] after the execution of this Agreement relating to the use by [BBNY] of the unique concept for the operation of a "Buddha-Bar" restaurant and (2) the trade mark license agreement to be granted by George V Entertainment [sic], SA to [BBNY] after the execution of this Agreement relating to the use by [BBNY] of [sic] "Buddha-Bar" trade mark."

41.     Pursuant to Clause 5.3 and paragraph 22 of Schedule 1, absent written consent, BBNY and its members may not "change the nature or scope of its Business as carried on from time to time or begin any new business not being ancillary or incidental to its Business."

42.     Furthermore, pursuant to Clause 5.2, each member in BBNY "must exercise their powers concerning the Company to ensure that it gives the Members information set out in Part B of Schedule 1 and complies with that part."

43.     Under Part B, BBNY is required to maintain financial records including, without limitation, bank records and each Member and its authorized representative is entitled to access BBNY's books and records.

44.     BBNY never established a Buddha-Bar at the Midtown Location.

45.     In or around February 2015, Vaygensberg informed Plaintiff that Westside 309, LLC, the landlord that owned and/or operated the Midtown Location, had proposed unreasonable lease terms and that BBNY would look for another location.

46.     Aside from informally notifying Plaintiff that BBNY would look for a new location, during the period of February to September 3, 2015, Vaygensberg and/or the Managing Members did not provide any material information on the business activities of BBNY.

47.     After a period of unexplained delay, Plaintiff and its representatives requested status updates from Vaygensberg regarding BBNY's status and the plans to open the New York location.

48.     No meaningful response was ever received.

49.     During the intervening time period, Plaintiff came to realize that defendants Vaygensberg and Stefanov had mislead Plaintiff regarding the financial condition of BBUK and that, in fact, said defendants were siphoning funds out of BBUK to fund their personal expenses.

50.     Specifically, and without limitation, Plaintiff learned that defendants Vaygensberg and Stefanov were (i) running monthly rent payments for their personal residence through BBUK; (ii) using the BBUK bank account debit cards to purchase goods at Harrods, a luxury

department store in London; (iii) running their personal American Express bills through the company without any effort to delineate personal from business expenses; (iv) causing the company to pay for defendants' personal air fare not incurred for legitimate business purposes; and (v) a variety of other obviously personal expenses, such as charges at an establishment known as "Tramps."

51.     The diversion by defendants Vaygensberg and Stefanov of corporate funds from BBUK left the company undercapitalized and, as a result, on or about September 3, 2015, BBUK was declared an insolvent under English law; and Lloyd Edward Hinton and Anthony Harry Hyams of Insolve Plus, Ltd. were appointed by the order of the High Court of Justice of the United Kingdom as Joint Administrators.

52.     In or around November 2015, Plaintiff demanded a return of its capital investment in BBNY made on or about December 1, 2014.

53.     By letter dated November 15, 2015, written by an attorney named Arnold Lieberman who, upon information and belief, represented the interests of defendants Vaygensberg and Tatarchuk, and who is not admitted to the practice of law in the state of New York, Vaygensberg agreed to return Plaintiff's capital contribution provided that (i) Plaintiff execute appropriate "assignment/transfer documents" sufficient to establish that all of the signatories "are acting under color of valid and legal corporate authority in this matter"; (ii) Plaintiff's signatories be "identified and their chain of authority to act on behalf of and legally bind the company" be authenticated and established; (iii) Plaintiff furnish adequate assurance to some "appropriate financial institution" of "full compliance" with the "Patriot Act", the "Dodd-Frank Act" and various other "anti-fraud/anti-money laundering regulations"; (iv) verification that Plaintiff "exists under the laws of an identifiable jurisdiction" and that signatures on all

documents "are properly authorized and authentic." A true and correct copy of the November 15, 2015 letter is attached as **Exhibit 3**.

54.     The letter further provided that "after receipt of all of the documents in the required form and subject to review and acceptance by my client, funds will be returned as agreed in the transfer document" and that "if it is not possible for you to comply with the client's requirements the client will have no other alternative but to initiate an action under the Federal Interpleader Act/statute and turn the funds over to the United States District Court to determine ownership." *Id.*

55.     The November 15, 2015 letter set forth inapplicable legal gobbledygook designed to create delay by erecting artificial and entirely unnecessary obstacles to the return of Plaintiff's capital and were intentionally designed to keep Plaintiff busy while Defendants pursued the unlawful acts complained of herein. None of the "compliance issues" raised in the November 15, 2015 letter were a factor when Vaygensberg urged Plaintiff to contribute the $1,040,000, which Vaygensberg claimed to have urgently needed to secure the much-desired Midtown Location.

56.     For the next six months, defendants Vaygensberg and Tatarchuk stalled Plaintiff's efforts to secure a speedy return of his capital contribution by finding hyper-technical "flaws" within documents executed by Plaintiff to secure return of its capital contribution.   Examples of various delay tactics are reflected in e-mail communications attached herewith as **Exhibit 4**.

57.     Ultimately, after Plaintiff complied with every single inane request made by defendants Vaygensberg and Tatarchuk, as communicated by Lieberman, Defendants still refused to return Plaintiff's capital contribution and broke off all communications.

58.    Plaintiff believes and therefore avers that on or about October 20, 2015, during the aforementioned period of delay, Defendants formed Elmwood to set up and operate a Buddha-Bar location in Tribeca (the "Tribeca Location").  *See,* **Exhibit 5**.

59.    Plaintiff believes and therefore avers that defendant GVE granted Elmwood a license to operate a Buddha-Bar franchise at the Tribeca Location.

60.    Plaintiff further believes and therefore avers that defendants NIS, Romanirov and Stefanov received an economic participation interest Elmwood and/or Buddha-Bar Tribeca.

61.    On or about May 19, 2016, Elmwood filed an application with the New York State Liquor Authority for a liquor license relative to a Buddha-Bar restaurant to be operated at 62 Thomas Street, New York, NY 10003.  *See,* **Exhibit 6**.

62.    According to press reports, on or about October 16, 2016, the New York State Liquor Authority granted the application.  *See,* **Exhibit 7**.

63.    According to press reports, defendant Barthelemy appeared before the New York State Liquor Authority and/or Community Board 1 and held himself out as an owner, manager and/or authorized representative of Elmwood and Buddha Bar.

64.    Barthelemy was joined by Stefanov, who had just run BBUK into the ground.

65.    According to press reports, defendant Stefanov invested in excess of $2.2 million in connection with the establishment of a Buddha-Bar Tribeca Location; however, Plaintiff believes and therefore avers that Stefanov did not invest *any* funds into BBNY or Elmwood and that his press statements actually refer to and/or take credit for the investment made by Plaintiff. *Id.*

66.     Thus, while promising to return Plaintiff's capital investment, Defendants (i) formed a new enterprise; (ii) usurped an opportunity vested with BBNY pursuant to law and under the Agreement; (iii) pursued a competing venture; (iv) misappropriated Plaintiff's capital contribution; (v) failed to return Plaintiff's capital contribution as agreed upon; and (vi) froze Plaintiff out of Elmwood.

67.     At the same time, Plaintiff believes and therefore avers that defendants Vaygensberg and Tatarchuk misappropriated – in whole or in part – BBNY's funds (including, but not limited to, Plaintiff's capital contribution) and diverted said funds for their own purposes.

68.     According to public records, during the relevant time period, Vaygensberg and Tatarchuk were defendants in a civil action brought in Miami-Dade County, Florida entitled *Danon v. Tatarchuk, et al.* No. 2013-3033387-CA-01(2) (the "Danon Action").

69.     A writ of execution issued against Vaygensberg and Tatarchuk in the Danon Action on September 26, 2014 for failure to satisfy a civil judgment in the amount of $64,356.90, issued by the Florida court, which stems from a unpaid judgment in Nassau County, New York. *See,* **Exhibit 8**.

70.     Furthermore, according to public records during the relevant time period, Vaygensberg and Tatarchuk were also defendants in another action brought in Miami Dade County, Florida entitled *Barash v. Vaygensberg, et al*. No. 2013-0101410-CA-01 (the "Barash Action").

71.     The Barash Action was an action to domesticate and enforce in Florida an unsatisfied $250,000 judgment obtained by one Alexander Barash against defendants Vaygensberg and Tatarchuk in Nassau County, New York.  *See,* **Exhibit 9**.

12

72.     According to public records, in the Barash Action, Vaygensberg and Tatarchuk were represented by Lieberman, the same attorney that prepared the November 15, 2015 letter referenced above.

73.     In connection with the Barash Action, which involved discovery in aid of execution seeking, *inter alia*, Vaygenberg's financial information and tax returns, Vaygensberg invoked the Fifth Amendment resulting in an appellate decision attached herewith as **Exhibit 10**.

74.     Plaintiff's last meaningful contact with Defendants took place between April 22, 2016 and May 3, 2016, wherein Plaintiff, on three separate occasions, requested copies of BBNY's bank statements, with no response from Defendants.  *See,* **Exhibit 11**.

75.     As set forth above, Plaintiff believes and therefore avers that Defendants have engaged in significant corporate malfeasance with respect to BBNY.

76.     Furthermore, Defendants have usurped a business opportunity of BBNY, which is presently being pursued through defendant Elmwood.

77.     Furthermore, notwithstanding repeated assurances, Defendants have not returned Plaintiff's $1,040,000 investment.

78.     Furthermore, Defendants have frozen Plaintiff out of the business of Elmwood.

79.     Defendants continue to harm and oppress Plaintiff's valuable interest in BBNY, all of which is to its severe harm and detriment.  Defendants have, and continue to, conceal assets, misappropriate funds, and since have undertaken steps to oppress Plaintiff's interest in BBNY and acquire total control over its affairs.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Dissolution of BBNY Pursuant to BCL §1104-A)

80.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 79 of the Complaint as if set forth in full herein.

81.     Plaintiff is the holder of 30% of the ownership interest in nominal defendant BBNY.

82.     Defendants' actions constitute illegal and oppressive actions toward Plaintiff.

83.     Defendants have looted, wasted, and diverted assets for non-corporate purposes.

84.     Pursuant to BCL § 1104-A, the Court should dissolve BBNY, make the books and records available for inspection and copying, and order a valuation of Plaintiff's interests in BBNY.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Accounting)

### (Against Defendants Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov, NIS and John Doe Defendants)

85.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 84 of the Complaint as if set forth in full herein.

86.     Defendants owe contractual, statutory, and fiduciary duties to Plaintiff, including the duty to allow Plaintiff to conduct an accounting.

87.     Defendants, at all relevant times, owed Plaintiff fiduciary duties to act in good faith and to diligently and fairly administer the affairs of BBNY.

88.     In violation and breach of their contractual, statutory, and fiduciary duties owed to Plaintiff, Defendants failed to diligently, carefully and honestly administer the affairs of BBNY, engaged in corporate waste, squandered assets of BBNY, and failed to faithfully perform their

fiduciary duties as majority shareholders of BBNY by, *inter alia*, knowingly self-enriching themselves by unlawfully using BBNY's assets to reimburse their personal expenses, wasting BBNY's assets, at the expense of, and to the detriment of Plaintiff.

89.     By reason of the foregoing, Plaintiff has been damaged in an amount that is unknown, and cannot be ascertained except by a complete accounting herein.

90.     Defendants have at all times refused to allow Plaintiff access to company books and records that would account for the acts complained of hereinabove.

91.     No adequate remedy exists at law for the equitable relief sought herein.

92.     That based on the above, Plaintiff respectfully requests Judgment directing Defendants to account to Plaintiff for all profits, directly or indirectly, losses, and distributions of BBNY since their inception, and awarding judgment against Defendants in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION**

**(BCL § 720—Officer and Director Misconduct)**

**(Against Defendant Vaygensberg)**

93.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 92 of the Complaint as if set forth in full herein.

94.     At all times relevant hereto, defendant Vaygensberg served as the Chairman of BBNY.

95.     Defendant Vaygensberg has violated BCL § 720 by violating his duties in the management and disposition of corporate assets and by transferring to himself, co-defendants and/or entities under his control corporate assets, and an accounting should be made therefor.

96.     This conduct by defendant Vaygensberg constitutes a gross deviation from his duties with respect to the management and disposition of company assets that were committed to his charge.

97.     By reason of the foregoing, the assets must be set aside, and Vaygensberg must be enjoined from dissipating any additional corporate assets.

## AS AND FOR A FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### (Against Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov and NIS)

98.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 97 of the Complaint as if set forth in full herein.

99.     Defendants owed Plaintiff, a 30% shareholder in BBNY, fiduciary duties.

100.    In violation and breach of their fiduciary duties owed to Plaintiff, defendants Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov and NIS failed to diligently, carefully and honestly administer the affairs of BBNY, engaged in corporate waste, squandered assets of BBNY, and failed to faithfully perform their fiduciary duties as majority shareholders of BBNY by, *inter alia*, knowingly and fraudulently self-enriching themselves by unlawfully using BBNY assets to reimburse personal expenses, wasting BBNY assets, at the expense of Plaintiff.

101.    Defendants Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov and NIS' actions constitute illegal and oppressive actions toward Plaintiff by virtue, since said defendants breached their fiduciary duties to Plaintiff.

16

102.     As a result of defendants Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov and NIS' breach of their fiduciary duties, Plaintiff has been substantially harmed in an amount to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Aiding and Abetting Breach of Fiduciary Duty)

#### (All Defendants Except GVE)

103.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 102 of the Complaint as if set forth in full herein.

104.     Collectively, Arkensberg, NIS and Romanirov, the majority members of BBNY, owed fiduciary obligations to Plaintiff, a minority interest holder.

105.     Vaygensberg, as a Chairman, owed fiduciary obligations to BBNY.

106.     Vaygensberg, from time to time, delegated his responsibilities as Chairman to Tatarchuk and Stefanov, who assumed the same fiduciary obligations.

107.     Vaygensberg, Tatarchuk and Stefanov aided and abetted Arkensberg, NIS and Romanirov in oppression and freeze-out complained of herein.

108.     Arkensberg, NIS, and Romanirov aided and abetted Vaygensberg in transferring moneys and business opportunities out of BBNY and into other entities, including Elmwood.

109.     Elmwood, Barthelemy, Stefanov and the John Doe Defendants aided and abetted the wrongful transfer of the Buddha-Bar opportunity from BBNY.

110.     Defendants had knowledge of the fiduciary relationships.

111.     With said knowledge, said Defendants intended to assist and encourage, participated in, and gave assistance and encouragement to the tortious conduct described above.

112.     Defendants' assistance and encouragement were a substantial factor in causing the tortious conduct described above.

17

113.    Defendants thereby aided and abetted Defendants' breach of fiduciary duty.

114.    As a result of the Defendants Vaygensberg, Tatarchuk, Arkensberg, NIS, Romanirov, Elmwood, Barthelemy, Stefanov and the John Doe Defendants' actions, Plaintiff has been substantially harmed in an amount to be determined at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION

**(Conversion)**

**(Defendants Vaygensberg, Tatarchuk, Stefanov, and Arkensberg)**

115.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 114 of the Complaint as if set forth in full herein.

116.    Defendants Vaygensberg, Tatarchuk, Stefanov, and Arkensberg failed to diligently, carefully and honestly administer the affairs of BBNY, engaged in corporate waste, squandered assets of BBNY, and failed to faithfully perform their fiduciary duties as majority shareholders of BBNY by, *inter alia*, knowingly and fraudulently self-enriching themselves by unlawfully using BBNY assets to reimburse their personal expenses, wasting BBNY assets, all at the expense of Plaintiff.

117.    The above-described actions of said defendants constitute wrongful conversion of Plaintiff's interest in BBNY.

118.    Defendants continue to wrongfully convert Plaintiff's interests.

119.    As a result of defendant Vaygensberg, Tatarchuk, Stefanov, and Arkensberg's conversion, Plaintiff has been substantially harmed in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

**(Defendants Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov and NIS)**

120.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 121 of the Complaint as if set forth in full herein.

121.     There is an implied covenant that Defendants Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov and NIS will deal fairly and in good faith with Plaintiff.

122.     Said Defendants have, through their conduct in connection with the conduct and affairs of BBNY and in derogation of certain agreements alleged herein, violated their obligations to act in good faith, and to deal fairly with Plaintiff, that obligation is implied in law.

123.     As a direct and proximate result of Defendants Vaygensberg, Tatarchuk, Stefanov, Arkensberg, Romanirov and NIS' breach of the implied covenant of good faith and fair dealing, Plaintiff has been and will be deprived of the value of its interest in BBNY and Elmwood, and has been substantially injured in an amount to be determined at trial.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

**(Violation of New York Franchise State Act, Art. 33 NY Code § 680 et. seq.)**

**(Defendants GVE, Arkensberg, Romanirov, NIS, Nominal Defendant BBNY and Vaygensberg)**

124.     Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 123 of the Complaint as if set forth in full herein.

125.     The purpose of the New York State Franchise Act (the "Act") "is to provide prospective franchisees and potential franchise investors with the material details of the franchise offering … and to prohibit sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled."

19

126.    Defendants GVE, Arkensberg, Romanirov, NIS, nominal defendant BBNY and Vaygensberg offered Plaintiff a franchise within the meaning of Section 681(3) of the Act to Plaintiff, orally, and pursuant to the Agreement.

127.    Said Defendants engaged in fraudulent and unlawful practices under Section 687 of the Act by offering for sale and ultimately selling this franchise to Plaintiff.

128.    Pursuant to Section 691 of the Act, Plaintiff is entitled to rescission, a return of the $1,040,000, together with interest and counsel fees.

129.    Under Section 691 of the Act, defendants GVE, Arkensberg, Romanirov, NIS, nominal defendant BBNY and Vaygensberg are jointly and severally liable because they have directly or indirectly owned or controlled the franchisor defendants or said defendants were officers, insiders or persons in control of the franchisor.

## AS AND FOR AN NINTH CAUSE OF ACTION

### (Breach of Contract)

### (Defendants Arkensberg, Romanirov and NIS)

130.    Plaintiff repeats and re-alleges each and every allegation contained in Paragraph 1 through Paragraph 131 of the Complaint as if set forth in full herein.

131.    Pursuant to Clause 3.1 of the Agreement, BBNY was required to "carry on the business of setting up and operating a bar and restaurant facility called "Buddha Bar" at 357 West 57th Street, New York, New York USA pursuant to the Licenses and any other business it is agreed should perform in accordance with Clause 5.3 and paragraph 22 of the Schedule 1." *See* Ex. 1.

132.    Pursuant to Clause 1.1 of the Agreement, the term "Licenses" is a defined term and refers to the "concept license agreement to be granted by Creative Design FZ LLC to

[BBNY] after the execution of this Agreement relating to the use by [BBNY] of the unique concept for the operation of a "Buddha-Bar" restaurant and (2) the trade mark license agreement to be granted by George V Entertainment [sic], SA to [BBNY] after the execution of this Agreement relating to the use by [BBNY] of [sic] "Buddha-Bar" trade mark." *Id.*

133.    Pursuant to Clause 5.3 and paragraph 22 of Schedule 1, absent written consent, BBNY and its members may not "change the nature or scope of its Business as carried on from time to time or begin any new business not being ancillary or incidental to its Business." *Id.*

134.    Furthermore, pursuant to Clause 5.2, each member in BBNY "must exercise their powers concerning the Company to ensure that it gives the Members information set out in Part B of Schedule 1 and complies with that part." *Id.*

135.    Under Part B, BBNY is required to maintain financial records including, without limitation, bank records and each Member and its authorized representative is entitled to access BBNY's books and records.

136.    By reason of the aforesaid, Defendants Arkensberg, Romanirov and NIS breached the terms of the Agreement in multiple and material respects.

137.    By reason of the aforesaid breach, Plaintiff has been harmed as heretofore alleged.

## **PRAYER FOR RELIEF**

**WHEREFORE**, it is respectfully requested that this Court enter judgment on each and every claim for relief set forth above and award the following relief including, but not limited to: all compensatory damages that plaintiff Mprosiemo Limited is entitled in an amount to be determined at trial; all punitive and exemplary damages that Plaintiff is entitled in an amount to be determined at trial; counsel fees, costs and disbursements including expert fees; and all such other and further relief as this Court deems just and proper.

21

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all triable issues contained in the Complaint.


Dated: New York, New York
         May 18, 2017

Respectfully submitted,

**FOX ROTHSCHILD LLP**


s/   *Ely Goldin*_____
Ely Goldin, Esq.
100 Park Avenue, Suite 1500
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940
*Attorneys for plaintiff Mprosiemo Limited*